Filed 5/6/21  P. v. Reed CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B301475 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA105464) |
| v. | |
| JAMAL REED, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Jamal Reed (defendant) appeals his conviction for attempted voluntary manslaughter and the resulting 20-year prison sentence on the grounds of (1) insufficiency of the evidence, and (2) the trial court's erroneous failure to exercise its discretion in dismissing two sentencing allegations stemming from his 1994 robbery conviction.  His arguments lack merit, so we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

During the first few days of December 2016, Humberto Moreno (Moreno) was hosting a multi-day birthday celebration for himself in the common area of an apartment complex in Long Beach, California.  Around 6:00 p.m. on December 3, Moreno heard a commotion in one of the complex's apartments where his friend lived and went to check it out.  As he entered the apartment, Moreno saw eight to 10 people in the apartment's living room.  One of those people was defendant, who had been a long-term guest in that apartment for a few months.

After Moreno and defendant exchanged "What's up?" greetings, defendant told Moreno, "I don't like you . . . , cuz" and punched Moreno in the chest.  The two men exchanged several blows.  Moreno was younger and bigger than defendant, and managed to knock defendant to the ground two times.  While defendant was on the ground the second time, defendant told a second man in the room to "get [Moreno].  It's your turn."  As Moreno and the second man started to exchange blows, defendant pulled out a knife and stabbed Moreno in the leg.  Moreno fell backwards, knocking down a glass TV stand, and landing on his back.  At that point, and as the second man was punching Moreno, defendant crouched over Moreno and stabbed him 20

2

more times in his abdomen, left side, left hip, leg, lower back, buttocks and left shoulder and arm.  Blood splattered everywhere.  Defendant and the second man then ran out of the apartment.

Moreno spent three days in the hospital.  While there, doctors repaired 21 stab wounds and repaired five punctures to Moreno's abdominal wall, which had lost its integrity due to the multiple knife incisions.  However, because Moreno had a "large layer of fat" around his midsection, none of the knife incisions harmed a "vital organ[]."  The doctor classified Moreno's injuries as "serious."

## II.    Procedural Background

The People charged defendant with (1) attempted premeditated murder (Pen. Code, §§ 187, subd. (a), 664),[1] and (2) assault with a deadly weapon (§ 245, subd. (a)(1)).  As to both charges, the People further alleged that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used a deadly and dangerous weapon (namely, a knife) (§ 12022, subd. (b)(1)).  The People also alleged that defendant's 1994 robbery conviction constituted a "strike" under our Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j)) as well as a prior serious felony (§ 667, subd. (a)(1)).

Defendant took the stand at trial, testifying that Moreno threw the first punch, that Moreno sat on top of defendant, and that defendant stabbed Moreno just two or three times because he "fear[ed] for [his] life and [his] safety."  Defendant had no explanation for how Moreno got the other 18 or 19 stab wounds.

---

1    All further statutory references are to the Penal Code unless otherwise indicated.

The trial court instructed the jury on the charged crimes of attempted premeditated murder and assault with a deadly weapon; on the lesser included crime of attempted voluntary manslaughter (both due to heat of passion and imperfect self-defense); and on perfect self-defense.

The jury found defendant guilty of attempted voluntary manslaughter and assault with a deadly weapon, and found the great bodily injury and weapon allegations to be true. After defendant waived his right to a jury trial on the prior "strike" allegation, the trial court subsequently found that allegation to be true.

The trial court sentenced defendant to 20 years in state prison. Specifically, the court imposed a 20-year sentence for the attempted voluntary manslaughter count comprised of a base sentence of 11 years (the high-end term of five and one-half years, doubled due to the prior strike), plus five years for the prior serious felony, plus three years for the great bodily injury enhancement, plus one year for the weapon enhancement. The court imposed a sentence of two years for the assault with a deadly weapon count, but stayed the sentence pursuant to section 654. In imposing this sentence, the court expressly denied defendant's motion to dismiss the prior "strike" allegation.

Defendant filed this timely appeal.

## DISCUSSION

### I.    Sufficiency of the Evidence for Attempted Voluntary Manslaughter Conviction

Defendant argues that there was insufficient evidence that he had the intent to kill Moreno, and thus could not be convicted of attempted voluntary manslaughter. In reviewing whether the evidence supports the jury's finding that defendant acted with the intent to kill, our task is not to "substitute [our] judgment for

4

that of the jury" (*People v. Pride* (1992) 3 Cal.4th 195, 247 (*Pride*)); rather, our job is merely to assess whether, viewing the evidence in the light most favorable to the jury's verdict, there is "'"substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable [jury] could find the defendant guilty beyond a reasonable doubt."'" [Citation.]" (*People v. Casares* (2016) 62 Cal.4th 808, 823, overruled in part on other grounds as stated in *People v. Dalton* (2019) 7 Cal.5th 166, 214; *People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

Because voluntary manslaughter is a type of intentional homicide that lacks malice aforethought (*People v. Bryant* (2013) 56 Cal.4th 959, 970) and because all attempt crimes require specific intent (§ 21a; *People v. Gutierrez* (2003) 112 Cal.App.4th 704, 710), a person may be convicted of attempted voluntary manslaughter only if he acts with the intent to kill. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1545.) Because there is "'rarely direct evidence of a defendant's intent'" to kill, that intent is usually to be "inferred from the defendant's acts and the circumstances of the crime." (*People v. Smith* (2005) 37 Cal.4th 733, 741 (*Smith*).)

Substantial evidence supports the jury's finding that defendant acted with the intent to kill Moreno. That is because a jury may infer an intent to kill from a defendant's conduct of repeatedly stabbing a person, particularly in vulnerable areas of the body like the torso or the head. (*People v. Moore* (2002) 96 Cal.App.4th 1105, 1114; *Smith, supra,* 37 Cal.4th at p. 741; *People v. Morales* (2020) 10 Cal.5th 76, 91; *Pride, supra,* 3 Cal.4th at pp. 247-248; *People v. Avila* (2009) 46 Cal.4th 680, 701-702 (*Avila*); *People v. San Nicolas* (2004) 34 Cal.4th 614, 658 ["sheer

5

number of wounds" implies intent to kill].) Viewing the evidence in the light most favorable to the verdict, defendant crouched over Moreno as Moreno was being punched by the second man and proceeded to stab him 21 times, with the majority of those wounds in Moreno's abdomen and back.

Defendant resists this conclusion with what boil down to two arguments. First, defendant argues that he could not have formed an intent to kill because his victim had a "large layer of fat" around his midsection, so repeated stabs with a shorter knife would not hit any vital organs. We reject this argument. It is well settled that the extent of injury a defendant inflicts is "not dispositive" of his intent. (*Avila*, *supra*, 46 Cal.4th at p. 702.) Just as an assailant's fortuitous bad aim with a gun or a knife does not negate his intent to kill (*People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1552; *People v. Lashley* (1991) 1 Cal.App.4th 938, 945), the fortuity that Moreno's "large layer of fat" resulted in more severe structural damage to his abdominal wall but less severe injury to his vital organs does not negate the intent to kill defendant displayed by his rapid-fire stabbing of Moreno's torso and back nearly two dozen times in 30 seconds. Second, defendant urges that his attack was just a "rash impulse" stemming from a mutual combat and lacked any real motive. This argument ignores that an intent to kill may be inferred "'even if the act was done without advance consideration and only to eliminate a momentary obstacle or annoyance'" (*Smith*, *supra*, 37 Cal.4th at p. 741, italics omitted), and defendant himself testified that Moreno "bothered" him. The absence of a more sinister motive for defendant's attack is of no consequence for the same reason.

6

## II. Sentencing Challenges

### A. *Refusal to dismiss the "strike" allegation*

Defendant argues that the trial court erred in denying his motion to dismiss the allegation that his 1994 robbery conviction constituted a "strike" under our Three Strikes Law. A trial court has the discretion to dismiss such allegations. (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 162.) In deciding whether to exercise this discretion, the court is to "'consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) There is a "strong presumption" against granting a motion to dismiss. (*Id.* at p. 378.) We evaluate a trial court's decision not to grant a motion to dismiss for an abuse of discretion. (*Id.* at pp. 373-374.)

The trial court did not abuse its discretion in denying defendant's motion to dismiss the strike allegation. The court cited three reasons for declining to strike the allegation notwithstanding the age of the prior "strike" conviction and the absence of any felony convictions in the intervening 22 years— namely, (1) the prior 1994 robbery involved defendant robbing the victim at gunpoint, (2) the current crime "was a serious, serious offense," and (3) defendant's felonies involved an "increasing use of violence" (presumably because he went from threatening someone with a deadly weapon to actually *using* a deadly weapon). These are valid considerations, and the trial

7

court's weighing of the factors favoring and disfavoring dismissal of the allegation was not an abuse of discretion.

Defendant levels four challenges at the court's ruling. First, he argues that the court did not give weight to the jury's decision to convict defendant of the lesser included offense of attempted voluntary manslaughter rather than attempted premeditated murder. What matters, however, is what the defendant did—and the court properly considered the seriousness of defendant's conduct in stabbing Moreno 21 times. Second, defendant argues that the trial court erred in giving "sole[]" weight to the seriousness of his current offense. This misreads the court's stated explanation. Third, defendant argues that he is not a "career criminal" because his prior "strike" conviction is old and because he only committed two misdemeanors in the decades between robbing someone at gunpoint and stabbing Moreno repeatedly with a knife. However, the age of a prior strike conviction, while relevant, is not dispositive; the trial court considered the age of that conviction, but found it offset by defendant's intervening (albeit minor) criminal history and the escalating nature of his use of violence. Lastly, defendant argues that the trial court "failed to balance the relevant facts." We "presume[] that the trial court considered all the relevant factors in denying [a] motion to strike" (*People v. Pearson* (2008) 165 Cal.App.4th 740, 749), and defendant has not rebutted that presumption. At bottom, defendant is asking us to reweigh the factors in a way more to his liking, but that is beyond our purview. (*People v. Myers* (1999) 69 Cal.App.4th 305, 309 ["'[W]e do not reweigh the circumstances of the case to determine whether, in our opinion, the trial court should have . . . exercis[ed] its discretion to strike a prior conviction'"].)

**B.** *Failure to strike the prior serious felony allegation*

On January 1, 2019, the law changed to give trial courts the discretion to strike the five-year enhancement for having a prior serious felony conviction.  (§ 667, subds. (a) & (f)(2); Stats. 2018, ch. 1013, §§ 1-2.)  At defendant's sentencing in late September 2019, the trial court did not dismiss that enhancement.  Defendant argues that because the court did not expressly indicate that it was declining to exercise its discretion to dismiss that enhancement, the court erred and a remand is required.  He is wrong.  Although the trial court did not discuss its authority to dismiss this allegation, its silence on this point is of no consequence.  That is because, "[i]n the absence of . . . evidence to the contrary, we must presume the [trial] judge was aware of his [or her] discretion and chose not to exercise it." (*In re Consiglio* (2005) 128 Cal.App.4th 511, 516; see also *People v. Mosley* (1997) 53 Cal.App.4th 489, 496 ["The general rule is that a trial court is presumed to have been aware of and followed the applicable law"].)  Here, there is no evidence to the contrary.

9

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

10